May it please the Court, the first issue we have to deal with here, of course, is waiver, whether or not Johnson waived his right to appeal. Where there is a jurisdictional defect, as here, there's no waiver. The court, the U.S. District Court, had no jurisdiction over count 2, the witness tampering count, the count to which James Johnson pled guilty. The second way that Johnson Why didn't he have jurisdiction? Because in the indictment, the government failed to allege an element of the offense, that the law enforcement officer is a law enforcement officer of the United States. But that was old law. Now we don't analyze this for harmless error anymore. It's purely jurisdictional. Lack of jurisdiction is plain error and remains plain error. And the only hope the government Any technical defect in the indictment is jurisdictional. It's not a technical defect. The indictment, according to a ream of Supreme Court law and law of this circuit, must list the elements of the offense. Mr. Hartzell. Yes, sir. Did the indictment cite 18 U.S.C. 1512a2a, yes or no? I don't remember if it cited a2a. Well, let's take a look at it. Let's take a look. Where's the indictment? The indictment reads, on or about November 29th, et cetera, on the Pascua Yaqui Indian Reservation, et cetera, et cetera, et cetera, section 1512a2c, right? A2c. What am I to do with a case of United States v. James which tells us that if the indictment cites the statute that sufficiently informs the defendant for purposes of due process? Well, what the indictment didn't cite, Your Honor, was the separate statute that defines law enforcement officer. It doesn't have to. It says. The statute says, interfering with a communication with a law enforcement officer or United States judge or judge of the United States, which has been interpreted to mean a Federal officer. It has. By the Supreme Court. Next. Why isn't that sufficient information? Based on Ninth Circuit court law. Can this panel say, well, Judge T.J. Nelson, T.G. Nelson, you are all wet, God bless your soul, and you're wrong? What James says, Your Honor, and what subsequent cases say is if. What subsequent case do you have, and I've got my pen out here, that tells me that the case of United States v. James has been abrogated or overruled? It hasn't. Well, then. It hasn't. But what it says is if that is sufficient to allow the defendant to defend against the charges, to inform the defendant of what it is the government is alleging. Yet here we have a U.S. attorney's office, a defense attorney with great experience before me, and me looking at this indictment, looking at the statute, and going all the way through to appeal without catching that the law enforcement officer has to be a law enforcement officer of the United States. So just by citing the statute and not listing the necessary element, you know, which Bailey and the Supreme Court are. You should all read the statute more carefully, you, the U.S. attorney, and the defendant. Well, and another interesting point is, is that had everybody read this statute, they would have realized that there was no Federal crime, because. What do we do with the 28J letter filed by the U.S. attorney's office this week? Well, we read it and then we deal with the cases one at a time. Fowler v. United States. Well, I'm talking about this, so what do we do with this? Ah, great. Now, Fowler says the government has to show a reasonable likelihood that the communication, the hypothetical communication in Fowler, because remember, Fowler is a case where the bad guy blasts a cop outside a cemetery, prevents him from communicating with anyone, so we have a hypothetical communication. In this case, we don't have a hypothetical communication. That cell phone dialed 911. There's a 911 tape at the Pima County Sheriff's Office where the officer is saying, I've got an open line. We can track it. We're sending a Pima County car right there. It's not a hypothetical communication. It's a real communication, an actual communication. And it was to the Pima County Sheriff's Department. And it was a 911. Where is that in the record? What? Where is that in the record on appeal? It's not on the record on appeal, nor is the fact that Jacob Garcia or Mr. Garcia is BIA cross-certified, and if you're relying on Cabazon Band of Mission Indians. That's not Mr. Garcia's photograph and the fact that his BIA cross-reference is not in the record on appeal either. Right. All right. So why don't we stick to the record? So sticking to the record. The record here is very clear. The indictment says this crime was committed to an Indian on an Indian reservation. Right? That's the assault count line. Now, Justice Breyer in Fowler tells us if someone is charged with robbing the gold depository at Fort Knox and there is an interruption of a communication to a law enforcement officer, it's more likely than not, it's reasonably likely, that's the Fowler test, that it was an interruption to a Federal law enforcement officer. What's the difference between Fort Knox robbery and a crime to an Indian on an Indian reservation? Isn't it likely that the call would have been to a Federal law enforcement officer? Well, first of all, I repeat that Fowler deals with a hypothetical call. And here, had the facts been made, it would show a real call. But there's a difference. Let's not argue beyond the record. There's a difference. Well, in the record, it says a call was made. It just didn't say to whom. She was about to call and he knocks the phone out of her hand, right? That's the indictment. Yes. That's what we have to deal with. You're saying the indictment doesn't inform him that the call has to be made to a Federal officer. Correct. Fowler tells us that so long as there's a reasonable likelihood that the call would have been to the Federal officer, using the Fort Knox analogy, I'm asking you, distinguish Justice Breyer's Fort Knox analogy and Fowler from the situation here, if you would. Count one was overcharged. The facts later turned out that it was a simple assault. Count one we're not dealing with. Well, count one is the crime, the Federal crime. Count one. He pleaded to count two. Right. Count one was dismissed. Yes, yes. But in the analogy you're making, Your Honor, about the Fort Knox gold bullion, I mean, the attempted robbery of that, we're talking about the ---- It's an assault on an Indian. Right. On an Indian reservation. Right, which would have been a misdemeanor, and that would not likely have gone to the FBI. Well, who would it have gone to? Who has jurisdiction? Because there's a lot of delegations, as I understand it. Who has jurisdiction over domestic violence assaults on an Indian by a non-Indian on this reservation? The Pasquaiockee Police Department. I see. And there's no ---- and okay.  Yes, Your Honor. And so these ---- there's a statute that makes these not chargeable as Federal offenses, but tribal offenses in a tribal court? Only if it's one Indian assaulting another Indian, then it would be charged in tribal court. A non-Indian assaulting an Indian under 18 U.S.C. 1152 is charged in Federal court. So it's going to go to a Federal law enforcement officer at some point. It could be a judge. It could be an U.S. attorney. But that's only in a case where there's a hypothetical communication. Okay. This is a case where someone's phoning the police about a domestic violence situation, which is going to go to the ---- ultimately to the Pasquaiockee Police, and then the Pasquaiockee Police, they're not Federal law enforcement agents. Some are cross-certified. But when you look at the Kavazan Band of Mission Indians holding, that is so limited to whether or not the Kavazan Band of Mission Indians Police Department can have light bars on the top of their cars when they're driving across California highways, and that what they're talking about ---- I mean, and plus, they even say are Federal law enforcement agents in certain circumstances when they're doing the BIA enforcement in that Kavazan Band of Mission Indians decision. Even the Garcia detective who's cross-certified by BIA is not for all purposes, perhaps under the Federal Tort Claims Act is, but not for all purposes a Federal law enforcement officer. Roberts. Counsel, let me tell you what's bothering me about this case, aside from the concerns of the very good concerns of my colleagues. What the U.S. Attorney's Office has provided this last week with the Jacob Garcia certification is outside of the original record. And you now want to tell us about the call to 911 and who was going to respond to that, which is also outside of the record. The problem is, is that neither the government nor Mr. Johnson raised any of this before the district court. So we're here now on plain error review. You did not set out this problem as a separate issue. You raised it, I think, on page 11 of your brief in a paragraph that contained no citations to any case. The government responded in a footnote in the red brief referring to a Fourth Circuit case, Davis, and you responded in your reply brief with alerting to the district court to Fowler for the first time. So we're left with something that you now claim is plain error that the district court should have picked up, that none of you picked up, and that nobody picked up, and we didn't get to Fowler until we got to your reply brief. So we've had no development of the record. So, you know, haven't you just waived this? No. It's shame on us for not catching it earlier. Shame on both of us. But you did seem to pick up, even though you didn't pick up Fowler, you sort of picked up the point in your blue brief. But you never set it out as a separate issue. It's just part of a long argument about other things. And I know I'm over time, but briefly, the change of plea, what Johnson pled to wasn't a Federal offense. It didn't include. That is clear and obvious and well-developed in the briefing. He pled to a four-element offense and completely eliminated the fifth element. He pled to a crime that was listed as a Federal crime with all its elements, because the statute was cited. So if there was something that was plain and that prejudiced him, I don't see it because this was a Federal matter, as you just told me. You told me it's non-Indian, on an Indian, on a Federal reservation, and it's a Federal matter. So it wasn't — it wasn't a fundamental error that fundamentally prejudiced him. Well, I am out of time, but, you know. So you think — okay. Counsel, we have taken you well over your time. I'm going to allow you a minute for rebuttal. So if you wish to prepare a rebuttal, you may do so. But I will give you a minute. Thank you. Let's hear from the government. May it please the Court. I'm Chris Cabanillas from the District of Arizona. I would concur with what I perceive from the majority of the Court, that the citation of the statute is sufficient to demonstrate sufficient notice for the indictment. Well, this bothers me. You're from Arizona. You know, I'm from New York, right? I don't have a lot of these cases. But you must know what the law is about who has jurisdiction and how these things work in Arizona. And I didn't see anything in your brief to tell me what the law was about who had jurisdiction and how these things work under the grand Federal scheme. Your Honor, I think any deficiency is certainly my fault. In the footnote, because I think I was suffering from the same thing that Judge Breyer and Judge Bybee mentioned about how there were lots of things tossed into the opening brief, I was trying to respond to the general question about the law enforcement officer based on authority that I was aware of with Smith. And in the reply brief, it kind of came out about Fowler, and so that's why I wanted to file a 28J letter just to mention that that covered it. When it came to the indictment, I don't think the omission of the phrase of the United States is a fatal defect in the indictment for the reason that the statute is cited. And as we know from the record, and from Fowler as well, that you can actually have a communication to a law enforcement officer. I think Fowler specifically used language about how the statute covers a defendant who kills with intent to prevent communication with law enforcement officers generally, i.e., with any and all law enforcement officers. The question becomes just is the likelihood that this will reach a Federal person, law enforcement officer, at some point so outlandish or hypothetical or remote that you can't show it. And in a case where there's exclusive Federal jurisdiction, like we demonstrated in the 28J letter, you're going to have a Federal law enforcement officer. You can't demonstrate anything in the 28J letter because you didn't cite the relevant statutes. You cite some cases that weren't totally on point and that are out of date because there's been a lot of changes in the delegation to tribal authorities in recent years. Statutes. The statute, I think I cited 1515, which further defines the law enforcement officer portion. And that's the part where it talks about how the law enforcement officer is an officer or an officer or employee. And that includes prosecutors, too. And I guess if I could just finish that one point about how a Federal, when you look at Fowler as a State, you know, and there's language in there about how they're concerned, we want to make sure this brings the scope of this statute. We want to make sure it doesn't just encompass purely State investigations and proceedings, because it brings the scope of this Federal statute well beyond the primarily Federal area that Congress had in mind. So in this sort of exclusive Federal jurisdiction case, I don't think there's really an issue, sort of a broad stroke, even setting aside specific facts here like Detective Garcia. But we're looking at an underlying crime, which was an assault, right? So I seem to admit that this particular fact scenario, that assault is in Federal jurisdiction. I think that where the analysis the defendant's seeking to make sort of stumbles is that the 1512 witness tampering statute that he pled guilty to talks about the commission or possible commission of a Federal offense. So it doesn't require us to prove the what I'd call the solidity of the count one. You know, we have to show that is beyond a reasonable doubt and everything. That ultimately got dismissed for the plea. I think that the 1512 stands alone because he did plead guilty to preventing the victim from communicating with law enforcement, and he had that intent to prevent that communication. So on plenary review, just to highlight Judge Bivey's point, on plenary review, he has to show that there's this violation of substantial rights, and he can't show that because if you look at the change of plea proceeding, too, you have to ask yourself, if he's claiming there's error in him not being advised that law enforcement officer means law enforcement officer of the United States, he has to show he wouldn't have pled guilty. And in Dominguez-Benitez, he can't make that reasonable probability test, particularly because he says down below, you know, if you look, the court asks him at some point why are you pleading guilty or do you want to plead guilty, yes, I want to get it over with. I mean, that's the mindset you have at the change of plea. When he filed a motion to withdraw from the plea agreement, he didn't cite anything related to the legal sufficiency. He believes there's a deficient indictment, deficient to such an extent that there is no jurisdiction. Right. There may be that class of deficient indictments out there, but this is not it. And it's not it because? Because the statute cited, like James, actually the Ruelas case that I cited in the 28 J letters cites James, because if you go one of the reasons I cited Ruelas is I want to make sure the Court was aware that if he does claim insufficiency of the indictment, like what Judge Rastani just mentioned, that would be something reviewable, notwithstanding his waiver of appeals. I just wanted to make the Court aware of that, because the defendant, I think, is correct on that. But Ruelas, when they review it, they also look to James, and they do repeat that language that Judge Baya mentioned. And I think that then you have to ask, of the United States, does that phrase omitted from the indictment mean it is so insufficient it fails to allege a crime or provide notice? And we would submit the answer is no. And then on plain error review, with the rest of his arguments, I think that the denial of the motion to dismiss or the denial of his motion to withdraw from the plea agreement is still encompassed within his waiver. It shouldn't be reviewed. But even if it is, he's failed to show plain error. He can't meet the Dominguez-Benitez test, particularly, again, in an exclusive Federal jurisdiction offense. We we the reason I also I thought hard about whether to attach that BIA certification card, because it is outside the record. But because we're on plain error review, I wanted to let the Court know that had he raised this question, we would have not only mentioned the fact that it's exclusive Federal jurisdiction, but also that the one of the officers who responded was certified. If you want us to consider this, and Mr. Hartzell would ask that we consider the, you know, the text of the actual 911 call and the response by the Pima County Sheriff's Office, do we need to remand this back to the district court? I don't think so, because, you know, I was I think this decision does not rise or fall on either statement about the BIA or what Mr. Hartzell mentioned, also because it's clear Fallow's meant to encompass communications to law enforcement officers generally, because they don't want to have a situation. I mean, look at Fallow. Holy cow, that's so non-Federal in terms of its facts, but yet they didn't say it was insufficient as a matter of law. And here you have an exclusive Federal jurisdiction case, and we'd submit that in a case like this, you can tell there's no problem. Now, if the deputies had gone out there and realized that Johnson was not an Indian and this was an assault on an Indian on an Indian reservation, at some point would they have figured out that they probably didn't have jurisdiction and called in Tribal police or somebody else? Well, to the extent that you have a Federal offense that's charged and it ever comes to this court, it's got to go through an assistant U.S. attorney so the communication has reached a Federal person. So that's why that exclusive Federal jurisdiction point is just very helpful here. If she had called 911 and said, I'm an Indian on an Indian reservation, I just got assaulted by my non-Indian boyfriend, would the dispatcher have said, oh, I need to call Tribal police instead of the county sheriff? I can't answer that question, Your Honor. All I know is that Fowler is meant to encompass, as it says here, the statute covers a defendant who kills with intent to prevent communication with law enforcement officers generally, i.e., any and all law enforcement officers, and they wanted to make sure that the statute's interpretation was not so crabbed to prevent that, because that's the essence of the witness tampering statute. So if you look, if you examine, again, everything all together, we submit that it's evident the defendant's failed to show that the indictment is legally insufficient and that also he's failed to show any kind of plain error with regard to the change of plea. In the future after this case, will you specify that it was a Federal law enforcement official in your indictments? I've made that recommendation, Your Honor. I can't speak, again, for what everyone's going to do, but certainly the State  Roberts. I mean, it does seem like an interesting omission, because you've tracked the language of the statute so closely, but left out one word. I think that what happened here, too, if you look at it, that phrase, law enforcement officer, and it says, or judge of the United States, you know, again, I'd bet there's nothing in the record about what the government was thinking when it was indicted, but, you know, purely reading that, I could see why a person might omit the language of the United States. I suppose the 911 dispatcher could have called me and that would have brought him within the statute, but I wouldn't have known what to do. Right, Your Honor. I mean, I think that that's the bottom line is, is when it comes down to a case where there's a Federal exclusive jurisdiction crime, I think it is so beyond the pale to suggest that there's plain error at all through the admission of this phrase in the plea agreement. Would there be exclusive Federal jurisdiction if a non-Indian assaulted an Indian on an Indian reservation? That's what we have here, yes. A non-Indian – I'm sorry. A non-Indian commits an offense against an Indian in – on Pascua Yaqui is, is the Why do you say it's exclusive Federal jurisdiction? Based on Williams? I'm sorry. Am I misinterpreting your question? The case that we cited in our 28-J letter that says that this particular crime is encompassed exclusive Federal jurisdiction is a case called Williams from the Supreme Court in the 1940s, and it's – Yes, unfortunately, there have been statutory changes since the 1940s. True. But the general premise, this Court also cited in that later case, at least to – I guess the point here, though, and I guess I'd try to keep it to this case, is the defendant can't show that had he been told at the time that he pled guilty, by the way, law enforcement officer means of the United States, that all of a sudden he would have said, okay, I don't want to plead guilty anymore. I guess I still don't understand why you didn't cite the statutes that are relevant to exclusive Federal jurisdiction in this case. Any omission to that, Your Honor? I apologize. And that was just an oversight on my part. I just thought a 1940s case doesn't answer this for me. But it seems to me that you and your co-counsel are in agreement that non-Indian, un-Indian, on Indian land is Federal jurisdiction. Unless I'm wrong, Your Honor, but again, I'm relying on authority that I cited. And I think you're both in agreement on that. Again, it's under 1162. Yes, he's nodding yes. Okay. I think that's the case. All right. And also, just to – I know I'm out of – almost out of time here. Let me ask you this. Is it your position that this case turns on whether Williams is still good law? I guess not necessarily, Your Honor, because I don't think it's debated that this is something that would be a Federal offense. It's interesting. As I understand it, what your position is, is that police jurisdiction over the Pascua Indian tribe reservation, when an assault is committed against an Indian, invokes exclusive Federal jurisdiction. In other words, a State officer who was not cross-authorized would not be able to act. I guess I disagree with the premise, because a communication, according to Fowler, doesn't have to be directly with whoever the responding officer is. It's just, what is the likelihood that that's going to reach Federal authorities? So it doesn't rise and fall. So your position does not rise or fall on the issue of Williams continuing to be good law? No, it doesn't. It was just an illustrative point that in this particular case, we think we have exclusive Federal jurisdiction. But in a case that's charged Federally, how is it not reaching a Federal law enforcement person, including an assistant U.S. attorney? So for those reasons, I know I'm out of time. Just one more procedural addition. I didn't know if the Court's aware. The defendant has been arrested in December for violating his conditions of supervised release. There's a petition pending, and he's filed a motion to dismiss in the district court, alleging that his petition should be dismissed based on the fact that his conviction is invalid. And the district court is aware of this court's considering that on appeal. So the court's resolution of the question now affects also his supervised release petition below. Why does that affect our judgment? It doesn't. It just is a ---- Can you not bring it up? I'm sorry. Just as a procedural point, I wanted to make the Court aware that there is a proceeding pending. So it tends to taint the defendant. That's not why I raised it, Your Honor. It was because there's a petition pending where the district court was told that this court is reviewing this question. Thank you, Your Honor. There's two grounds for waiver. One of the grounds is that the plea agreement that contains the waiver is a contract between the government and the defendant, and not all of the elements of this offense were listed. One thing Fowler does explain, even though it's a different situation where someone is killed and all communication is hypothetical rather than an actual delayed communication, which is what the ---- you know, through force, which is what we have here in the Johnson case. Fowler lists the elements. The government must prove, one, a killing or attempted killing, two, committed with a particular intent, namely an intent, A, to prevent a communication, B, about the commission or possible commission of a Federal offense, C, to a Federal law enforcement officer or judge. So this becomes an actual element. If ---- there's no model jury instruction for this in this circuit. If there were a model jury instruction, it would list that. If there were a plea agreement that would follow that would check a model jury instruction, it would list that. Fowler is limited to a hypothetical situation. The holding of the Supreme Court is we consequently hold that in a case such as this one where the defendant does not have particular Federal law enforcement officers in mind, the government must show a reasonable likelihood that had, e.g., the victim communicated with law enforcement officers, at least one relevant communication would have been made to a Federal law enforcement officer. So what would have ---- so what facts would the government had to have shown, suppose it had been pled, suppose the government had argued it in the indictment, and if you went to trial, what facts would the government had to have shown in order to convict your client? If the victim calls 911 and says, I'm an Indian, I've been assaulted by my non-Indian boyfriend, we probably don't hold the dispatcher accountable for the intricacies of Federal jurisdiction, Federal, State, Indian jurisdiction over such a matter. And so if she sends the, if she sends the sheriffs out first, but it ultimately gets to tribal police, the sheriff says, you know something, I'm not sure, I think we probably ought to get tribal police involved here, at what point does the Fowler point still make your client amenable to Federal prosecution under this statute? Where there's a delayed communication, such as this. Did she have to ask that the FBI send out in order for your client to be convictable under this provision? No. The Pasquoiaque police is not BIA cross-certified, could testify in Federal court, and he would not be a Federal law enforcement agent. Right. But did she have to ask for a BIA cross-certified police officer to come out in order to make your client amenable to this statute? In a case like this, where the person isn't killed and actually makes the communication, that communication would have to be to a Federal law enforcement agent. So she had to be, she had to be, if she had just called tribal police and said, I need somebody sent out here to help me, so she hadn't called 911, she called tribal police directly, does it matter, does the convictability of your client turn on who answers the phone, whether somebody who answers the phone is cross-registered with the BIA? Not unless she's, or if she's phoning the, not if, no. If she's phoning the FBI, I mean, then my client would be guilty. Okay. Then your client's guilty. But if she calls, if she calls tribal police? No. I mean, that's, I don't even think the cross-certification issue, which it really isn't before the Court, makes a tribal police officer a Federal law enforcement officer, but that's something that ought to be brought up in a lower court and argued that Kavazan banned a Mission Indians case is not going to hold a whole lot of water in that regard. I submit to this Court that, no, I mean, my client did not, I count two as not a Federal offense because the alleged victim, the victim in this case, did not phone a Federal officer. You're saying the tribal police are not Federal officers under 1515? They are not, no. Do you have a case that says that? I cited one case about, it was a tort case in my opening brief, but no, I mean, there's a separate statute. But if this kind of crime is, can only be prosecuted Federally, then eventually it's got to get to a Federal officer. There's a Fowler standard where someone is killed. Okay. So you're, you're, you're relying on the fact that you think Fowler, Fowler can only apply to hypothetical situations? Where you have the reasonable likelihood standard that eventually it's going to get to a Federal officer. So if your, if your client had killed her, he'd be guilty of tampering. But if he just assaulted her, then he's not? Yeah. I mean. All right. We've taken you well over your time, counsel. All right. Happy to be here. All right. We thank, thank counsel for the argument. Case is submitted. And the final case on the oral argument calendar is Wileya Partners v. HSBC Bank, USA.
judges: Restani, Bybee, Bea